UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES JONES,

                    Plaintiff,                              Case No. 1:24-cv-256

v.                                                          Honorable Robert J. Jonker

UNKNOWN JUAREZ et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

will grant Plaintiff's motion (ECF No. 2) to proceed *in forma pauperis*. Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.*

*Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

federal claims against Defendants Horne and VanKrimpim for failure to state a claim. The Court

will also dismiss, for failure to state a claim, the following claims against remaining Defendants

Juarez, Brooke, Harrison, Copeland, Hadden, Giles, Novak, Unknown Party #1, Smith, and Kurtz:

Plaintiff's claims for injunctive relief, his claims regarding interference with the ability to petition

the government/access the courts, his due process claims, his conspiracy claims, and his Eighth

Amendment claims against all Defendants except Defendant Juarez. Plaintiff's Eighth Amendment claim against Defendant Juarez and his retaliation claims against Defendants Brooke, Harrison, Copeland, Hadden, Giles, Novak, Unknown Party #1, Smith, and Kurtz. The Court declines supplemental jurisdiction over all state law claims, and therefore dismisses all the state law claims without prejudice.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues DRF Defendants Corrections Officers Unknown Juarez, Unknown Copeland, Unknown Giles, and Unknown Horne, Sergeant Unknown VanKrimpim, and Hearing Investigators Unknown Party #1, Unknown Smith, and Unknown Kurtz. Plaintiff also sues IBC Defendants Grievance Coordinator Nathan Brooke, Inspector Riccardo Harrison, Assistant Deputy Warden Unknown Hadden, and Hearing Investigator Unknown Novak. Plaintiff sues Defendants in their individual and official capacities.

Plaintiff alleges that while he was confined at DRF beginning in September of 2023, Defendant Juarez repeatedly made sexually harassing comments to Plaintiff, such as telling him that he had a "fat ass, nice cock sucking lips, and that he wanted to have sex with [Plaintiff]." (ECF No. 1, PageID.4.) Plaintiff is mentally ill and tried to report the sexual harassment to staff, but staff merely laughed at Plaintiff and told him that he should just accept Defendant Juarez's advances. (*Id.*)

On November 26, 2023, while in the medline, Defendant Juarez again told Plaintiff that he had a "fat ass." (*Id.*) Plaintiff told Defendant Juarez that he "did not go that way cut it out." (*Id.*) Plaintiff then proceeded to his cell and shut the door. Shortly thereafter, Defendant Juarez arrived at Plaintiff's cell and entered, reaching out to grab Plaintiff's groin. Plaintiff states that he reacted instinctively and punched Defendant Juarez in the face. (*Id.*) Plaintiff asserts that Defendant Juarez had no reason to enter his cell. (*Id.*)

Later that day at approximately 8:48 p.m., Plaintiff asked Defendant Giles for the Prison Rape Elimination Act (PREA) hotline and a grievance form, but Defendant Giles refused, stating, "Choke on it fag." (*Id.*, PageID.7.) At approximately 8:56 p.m., Plaintiff began feeling dizzy and nauseated and believed this was due to his food being poisoned by Defendant Giles and staff. (*Id.*) Plaintiff asked for a drug test, but Defendant Giles refused. (*Id.*)

At 9:18 p.m., Defendant Giles illegally confiscated Plaintiff's JP6 player, his jogging suit, his Nike flip flop sandals, two tank tops, and one v-neck shirt. Defendant Giles refused to give Plaintiff a property slip. At 9:23 p.m., Defendant Horne walked past Plaintiff's cell and said, "How did you like getting your dick touched?" (*Id.*) At 10:06 p.m., Defendant VanKrimpim told Plaintiff that "if he was at MR he would have made Plaintiff eat all of the steps."[1] (*Id.*) At 10:12 p.m., Defendant Giles told Plaintiff that he would "stick his fingers in [Plaintiff's] ass." (ECF No. 1-5, PageID.20.)

Plaintiff received a misconduct for punching Defendant Juarez (Misconduct Hearing Report, ECF No. 1-6, PageID.22–23) and states that DRF Investigators Defendants Unknown Party #1, Smith, and Kurtz, came to his cell and told him that they would make sure he was found

---

[1] Plaintiff does not explain what an "MR" is or explain the meaning of "eat the steps" anywhere in his complaint.

3

guilty of a misconduct and cover up the sexual assault. They also told Plaintiff that they would make sure he did not receive appeal forms and would be unable to appeal the misconduct. (ECF No. 1, PageID.7.)

On November 27, 2023, Plaintiff attempted to file a PREA grievance by giving it to Defendant Copeland. However, Defendant Copeland read the grievance and stated, "I'm throwing this away you don't have shit coming. You[ are] not going to get my buddy Juarez prosecuted." (*Id.*, PageID.5.)

Plaintiff states that he was transferred to IBC in retaliation. (*Id.*) At this point, Plaintiff attempted to file a grievance on Defendant Copeland, but the grievance was rejected by Defendants Brooke and Hadden. Plaintiff states that Defendants Brooke, Hadden, and Harrison all came to his cell and told him that because he had assaulted Defendant Juarez, his PREA complaint was going to be determined to be "unfounded." (*Id.*) Plaintiff responded that he had told other staff about the assault and that Defendant Juarez had no business coming into Plaintiff's cell without a camera or legitimate reason. Defendants Brooke, Hadden, and Harrison responded that they were going to cover it up and that if Plaintiff filed a lawsuit, they would just say that he had not followed the proper channels. Defendants added that it was their word against Plaintiff's and that he was a "black felon." (*Id.*)

Plaintiff's hearing on his misconduct ticket occurred at IBC on December 15, 2023. (ECF No. 1-6, PageID.22–23.) Plaintiff admitted that he had punched Defendant Juarez during the hearing and video showed Defendant Juarez being knocked back out of Plaintiff's cell while trying to catch himself as his glasses flew off his face. Plaintiff was found guilty by non-party Hearings Officer Administrative Law Judge Lauer, who noted that Plaintiff's claim that he was protecting himself from Defendant Juarez's attempts to sexually assault him was not a defense to the

misconduct. (*Id.*) Plaintiff states that Defendant Novak later came to his cell and told him that he could not get an appeal form to appeal his misconduct ticket. (*Id.*, PageID.7.) Plaintiff asked other staff members for an appeal form, but they ignored him. (*Id.*)

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Injunctive Relief/Official Capacity Claims

Initially, the Court notes that the Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96.

Plaintiff complains of conduct that occurred while he was confined at DRF and IBC. Plaintiff has since been transferred to ECF. Plaintiff is no longer under the control of the named

Defendants and fails to allege facts showing that there is a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Lyons*, 461 U.S. at 102. Therefore, Plaintiff's claims for injunctive relief are properly dismissed. Moreover, because Plaintiff's claims for monetary damages are the only remaining claims in this case, his official capacity claims against Defendants are also properly dismissed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (an official-capacity defendant is absolutely immune from monetary damages); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998) (same).

### B.    Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain'" forbidden by the Eighth Amendment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must

therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

The Sixth Circuit has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks do not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *See Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Jackson v. Madery,* 158 F. App'x 656, 662 (6th Cir. 2005)); *e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson,* 158 F. App'x at 662 (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006), *partially abrogated by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit concluded that a prison officer's demand that a female prisoner expose her breasts or masturbate in the officer's presence on six occasions was not "isolated, brief and not severe," and was sufficiently serious to

9

state an Eighth Amendment claim that survives the defense of qualified immunity. *Rafferty*, 915 F.3d at 1095 (6th Cir. 2019); *see also Seltzer-Bey v. Delo*, 66 F.3d 961, 962–63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment).

Plaintiff alleges facts showing that Defendant Juarez repeatedly made sexual remarks to him and on one occasion grabbed his "groin area causing pain." (ECF No. 1, PageID.4.) The Court concludes that Plaintiff has alleged sufficient facts to support his Eighth Amendment claim against Defendant Juarez at this point in the litigation.

Plaintiff asserts that Defendants Giles, Horne, and VanKrimpim subjected him to verbal harassment immediately after the assault by Defendant Juarez. Although such conduct toward Plaintiff was reprehensible, it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendants Giles, Horne, and VanKrimpim ever touched him or had any form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *Johnson v. Valiquette*, No. 2:20-CV-200, 2020 WL 6792372, at *5 (W.D. Mich. Nov. 18, 2020); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998). Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendants Giles, Horne, and VanKrimpim for making harassing comments after the assault.

The remaining conduct by Defendants, that they interfered with his ability to file a PREA claim and/or took actions to cover up the assault by Defendant Juarez, did not pose a serious risk to his health or safety since Plaintiff does not allege that he continued to be in danger of assault by Defendant Juarez. Therefore, this conduct did not violate the Eighth Amendment.

### C.      Right to Petition the Government/Access the Court

Plaintiff asserts that Defendants' interference with his ability to file a PREA grievance and other grievances, and to appeal his misconduct conviction violated his right to petition the government and to access the courts. It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Initially the Court notes that a challenge to a misconduct conviction is not an attack on the prisoner's conviction or sentence; nor is it a challenge to the conditions of confinement. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (holding that the inability to appeal a misconduct conviction does not amount to actual injury); *c.f. Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (holding that a major misconduct conviction does not affect the duration of a prisoner's sentence in Michigan for prisoners, like Petitioner, who were convicted after 1987).

Nor is Plaintiff's right to petition the government violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F.

12

App'x 469, 470 (6th Cir. 2001). Therefore, Plaintiff fails to state a claim for the denial of his right to petition the government/access the courts.

### D.    Due process

#### 1.    Major Misconduct

Plaintiff claims that Defendants prevented him from appealing his misconduct conviction. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will

13

inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." In fact, Plaintiff fails to allege any facts regarding the consequences of his misconduct conviction.

Finally, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because it is clear that he received all the process due to him. In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process: (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Id.* at 563-69.

Plaintiff attaches a copy of the hearing report to his complaint. (ECF No. 1-6.) During his hearing, Plaintiff admitted that he did in fact punch Defendant Juarez in the face. In addition, the Hearing Officer considered Plaintiff's assertion that the action was justified because Defendant

---

[2] Plaintiff is serving time for crimes committed on June 22, 2021. *See* MDOC Offender Tracking System, https: //mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=529086.

Juarez was sexually assaulting him but concluded that this was not a valid justification for Plaintiff's conduct. (*Id.*)

Because Plaintiff fails to allege facts showing that a liberty interest was implicated by his major misconduct conviction, his related due process claims are properly dismissed.

### 2. Seizure of Property

Plaintiff claims that Defendant Giles seized his property following the assault without giving him a property slip as required by policy. To the extent that Plaintiff is asserting a violation of due process, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive

04.07.112, ¶ B (eff. Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim regarding the seizure of his property will be dismissed.

### 3.     Interference with Grievance Process

To the extent that Plaintiff is claiming interference with his ability to file a PREA grievance and other grievances, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### E.      Retaliation

Plaintiff claims that Defendants Copeland, Giles, Horne, VanKrimpim, Unknown Party #1, Smith, Kurtz, Brooke, Harrison, Hadden, and Novak retaliated against him for filing a PREA grievance on Defendant Juarez. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Initially, the Court notes that Plaintiff claims his transfer to IBC was retaliatory. However, Plaintiff fails to allege facts showing that any of the named Defendants were responsible for the

17

transfer. Moreover, transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). Plaintiff does not allege that he was transferred to a higher security level or a lock-down unit at IBC. Therefore, Plaintiff's has not alleged facts in support of finding that his transfer to IBC constituted an adverse action.

Plaintiff also alleges that many of the named Defendants interfered with his ability to use the grievance process by throwing away grievances or improperly rejecting them. Defendant Giles denied Plaintiff's request for the PREA hotline and for a grievance form by stating, stating, "Choke on it fag." (ECF No. 1, PageID.7.) Plaintiff believes that Defendant Giles and staff poisoned his food and when Plaintiff began to feel ill, Defendant Giles refused to allow him to take a drug test. (*Id.*) Defendant Copeland allegedly told Plaintiff "I'm throwing this away you don't have shit coming. You[ are] not going to get my buddy Juarez prosecuted." (*Id.*, PageID.5.)

Defendants Brooke and Hadden rejected Plaintiff's grievance on Defendant Copeland for destroying his PREA complaint. Plaintiff further states that Defendants Brooke, Hadden, and Harrison all came to his cell and told him that because he had assaulted Defendant Juarez, his PREA complaint was going to be determined to be "unfounded." (*Id.*) Plaintiff responded that he had told other staff about the assault and that Defendant Juarez had no business coming into Plaintiff's cell without a camera or legitimate reason. Defendants Brooke, Hadden, and Harrison responded that they were going to cover it up and that if Plaintiff filed a lawsuit, they would just say that he had not followed the proper channels. Defendants added that it was their word against Plaintiff's and that he was a "black felon." (*Id.*)

The Sixth Circuit has held that destruction of grievances and interference with grievances may be adverse action for purposes of a retaliation claim. *See Richards v. Perttu*, 96 F.4th 911,

918–19 (6th Cir. 2024). In so finding, the Sixth Circuit likened the destruction of grievances to the confiscation of legal papers addressed in *Bell v. Johnson*, since both acts had the potential to directly impede the plaintiff's pursuit of his claim. *Bell*, 308 F.3d at 604. Therefore, at this stage of the proceedings, the Court concludes that Defendants Giles, Copeland, Booke, Hadden, and Harrison engaged in adverse conduct sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

In addition, as noted above, Defendants Giles, Copeland, Booke, Hadden, and Harrison all referenced the sexual assault by Defendant Juarez and the PREA complaint when taking action against Plaintiff. Therefore, Plaintiff has alleged facts showing that the adverse action was motivated, at least in part, by the protected conduct. Therefore, Plaintiff's retaliation claims against Defendants Giles, Copeland, Booke, Hadden, and Harrison may not be dismissed on initial review.

Plaintiff also alleges that Defendants Unknown Party #1, Smith, and Kurtz, came to his cell and told him that they would make sure he was found guilty of a misconduct and cover up the sexual assault. They also told Plaintiff that they would make sure he did not receive appeal forms and would be unable to appeal the misconduct. (ECF No. 1, PageID.7.) Plaintiff states that Defendant Novak came to his cell and told him that he could not get an appeal form to appeal his misconduct ticket. (*Id.*) The Court concludes that for the same reasons that interference in the grievance process is adverse, so is interference with Plaintiff's ability to have a fair hearing on his misconduct and to appeal the misconduct. Therefore, Defendants Novak, Unknown Party #1, Smith, and Kurtz engaged in adverse conduct sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Moreover, assuming that Plaintiff's allegations regarding these Defendants are true, Plaintiff has alleged sufficient facts to show that their conduct was motivated by a desire to retaliate against him.

With regard to Defendants Horne and VanKrimpim, Plaintiff alleges that they each made harassing comments toward him following the assault by Defendant Juarez. In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus* 175 F.3d at 397 (citing *Bart*, 677 F.2d at 625). Therefore, the Court concludes that Plaintiff's retaliation claims against Defendants Horne and VanKrimpim lack merit and are properly dismissed.

F.    **Conspiracy**

Plaintiff claims that Defendants conspired with one another to violate his constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

A conspiracy claim fails when a plaintiff alleges facts showing that the defendants acted together but does not allege facts showing that the parties agreed to an objective to deprive the

plaintiff of his civil rights. *Siefert v. Hamilton Cnty. Bd. of Comm'rs*, 951 F.3d 753, 767-68 (6th Cir. Mar. 3, 2020). Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing an agreement between the alleged conspirators. Although Plaintiff alleges that many of the Defendants retaliated against him for his use of the grievance process, he alleges no facts suggesting that Defendants agreed to an objective or plan. He relies entirely on an attenuated inference from the fact that named Defendants subjected him to objectionable treatment. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.

Moreover, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510). In *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985. As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment,

they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. Plaintiff therefore does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. As a consequence, Plaintiff's conspiracy claims under § 1983 therefore are barred under the intracorporate conspiracy doctrine.

Accordingly, for these reasons, Plaintiff's § 1983 conspiracy claims will be dismissed.

### G.     State Law Claims

Plaintiff asserts that Defendants violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*

*v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise that jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).Here, the balance of the relevant considerations weighs against the exercise of supplemental jurisdiction. The federal claims are involved enough and entertaining potential state law claims against some Defendants will needlessly complicate matters. Moreover, when considering claims involving operation and conduct of state actions in state facilities, the Court believes it is ordinarily best to limit its focus to federal theories; state courts can address any state law thories.

Accordingly, all state law claims are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction.

### III.    Motion for Counsel

In Plaintiff's complaint, he seeks the appointment of counsel should this case not settle in mediation. (ECF No. 1, PageID.8.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995);

*Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will therefore be denied.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and will deny Plaintiff's request for appointment of counsel (ECF No. 1, PageID.8). Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Horne and VanKrimpim will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Juarez, Brooke, Harrison, Copeland, Hadden, Giles, Novak, Unknown Party #1, Smith, and Kurtz: claims for injunctive relief, claims regarding interference with the ability to petition the government or to access the courts, due process claims, conspiracy claims, and Plaintiff's Eighth Amendment claims against all Defendants except Defendant Juarez.

Plaintiff's Eighth Amendment claim against Defendant Juarez, and his retaliation claims against Defendants Brooke, Harrison, Copeland, Hadden, Giles, Novak, Unknown Party #1, Smith, and Kurtz remain in the case.

The Court dismisses all state law claims without prejudice because it declines to exercise supplemental jurisdiction.

An order consistent with this opinion will be entered.


Dated:      May 17, 2024               /s/ Robert J. Jonker
                                       Robert J. Jonker
                                       United States District Judge